RICHARD T. BELLINO, ALSO KNOWN AS RICH BELLINO, AND LA VISTA KENO, INC., APPELLANTS AND CROSS-APPELLEES, v. McGRATH NORTH MULLIN & KRATZ, PC LLO, ET AL., APPELLEES AND CROSS-APPELLANTS.

738 N.W.2d 434

Filed August 17, 2007.    No. S-06-130.

David A. Domina and Claudia L. Stringfield-Johnson, of Domina Law Group, P.C., L.L.O., for appellants.

John R. Douglas and David A. Blagg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

WRIGHT, J.

## I. NATURE OF CASE

Richard T. Bellino sought legal advice concerning the severance of his business relationship with Robert L. Anderson and La Vista Lottery, Inc. (Lottery). As a result of Bellino's actions in reliance on such advice, Anderson and Lottery sued and obtained a judgment against Bellino. Based on this judgment, the court awarded monetary damages and a constructive trust in favor of Anderson. Bellino brought the present action for professional negligence against the law firm McGrath North Mullin & Kratz, PC LLO, and two of its attorneys, James D. Wegner and William F. Hargens (collectively McGrath North). The jury returned a $1.6 million verdict in favor of Bellino. The district

court sustained McGrath North's motion for judgment notwithstanding the verdict in part and reduced the award to $229,036.40. Bellino appeals, and McGrath North cross-appeals.

## II. SCOPE OF REVIEW

■ The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

■ Concerning the overruling of a motion for a directed verdict made at the close of all the evidence, appellate review is controlled by the rule that a directed verdict is proper only when reasonable minds can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Fales v. Norine*, 263 Neb. 932, 644 N.W.2d 513 (2002).

■ On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006). To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.*

■ A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Epp v. Lauby*, 271 Neb. 640, 715 N.W.2d 501 (2006).

## III. FACTS

### 1. Underlying Case

This action for professional negligence arose out of the legal representation given to Bellino with regard to the severing of his business relationship with Anderson and Lottery. Bellino was the president, a director, and a 50-percent shareholder of

Lottery. Bellino's actions in severing this relationship resulted in litigation, the facts of which are reported in *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003). Some of those facts are recounted here for the sake of providing helpful background.

In 1989, the city of La Vista sought bids for the operation of a keno-type lottery for the city. Bellino and Anderson submitted a bid for the La Vista keno contract. In April 1989, Bellino and Anderson formed Lottery, a Nebraska corporation, for the purpose of operating the keno parlor. Bellino and Anderson each owned 50 percent of the shares of stock of Lottery, and both were officers and directors of the corporation.

Lottery entered into a keno operation contract with La Vista on May 16, 1989. The fixed term of the contract was extended through July 31, 1998, with a provision that the term would continue indefinitely beyond that term until one party served 60 days' written notice of termination upon the other.

Initially, Bellino and Anderson received salaries from Lottery. In 1993, following the advice of an accountant, they stopped receiving salaries. There was no express agreement between Bellino and Anderson as to the amount of time that each would devote to the lottery business. From 1994 to 1998, Lottery employed general managers, keno managers, supervisors, and keno writers.

In December 1997, Bellino and Anderson discussed the fact that Lottery's keno contract with La Vista was set to expire on July 31, 1998. Bellino told Anderson that he would meet with Anderson after the holidays to discuss Lottery's course of action. Shortly thereafter, in early 1998, Bellino sought legal advice from his attorneys concerning his desire to end the business arrangement with Anderson yet continue the keno operation.

In a letter to Anderson dated February 26, 1998, Bellino stated that he felt he was doing more than his share of the work. Bellino indicated he no longer intended to be associated with Lottery after the corporation's keno contract expired on July 31, 1998. In a letter dated April 21, 1998, Anderson's attorney informed Bellino that the keno contract with the city of La Vista was a corporate opportunity. The letter expressed Lottery's desire to have Bellino cooperate with Lottery in bidding for the new contract.

During the first quarter of 1998, Bellino met with La Vista's city administrator, Cara L. Pavlicek. After her conversation with Bellino, Pavlicek reviewed the contract and recommended to the city council that the keno contract be put up for competitive bid. On April 21, 1998, the La Vista City Council voted to accept Pavlicek's recommendation and put the keno contract up for bids. On May 4, Bellino's attorney wrote to Anderson and Lottery, informing them that Bellino had no interest in trying to resolve matters with Lottery and would not bid for the contract as part of Lottery.

Based on the advice of his attorney, Bellino formed La Vista Keno, Inc. (Keno), of which he was the sole shareholder. Bellino prepared and submitted a bid on behalf of Keno for the keno contract. The city awarded the new keno contract to Keno on July 24.

On July 29, 1998, Anderson and Lottery sued Bellino and Keno, alleging that Bellino had breached a fiduciary duty he owed to Lottery as an officer, director, and shareholder of Lottery by forming Keno and bidding on the La Vista keno contract. Anderson and Lottery sought the imposition of a constructive trust on Keno's business operations for the benefit of Anderson and Lottery.

Following a trial on May 9, 2000, the district court concluded that Bellino and Keno had obtained the contract with La Vista in breach of Bellino's fiduciary duty to Lottery and that the appropriate remedy was the imposition of a constructive trust for the benefit of Anderson and Lottery. The court further ordered Bellino to pay Anderson and Lottery $644,992.63, representing various items, including rents, profits, and benefits resulting from Bellino and Keno's receiving the keno contract from La Vista.

Bellino appealed to this court. On March 28, 2003, we affirmed the district court's order imposing a constructive trust upon Keno for the benefit of Anderson and Lottery, as well as the monetary judgment entered against Bellino.

### 2. PRESENT ACTION FOR PROFESSIONAL NEGLIGENCE

Bellino was represented in the above-described proceedings by attorneys Wegner and Hargens of McGrath North. Bellino

relied on the attorneys' advice when he formed Keno and submitted a bid for the keno contract with La Vista. These attorneys continued to represent him throughout the resulting litigation with Anderson, including at trial, during initial settlement discussions, and on appeal. The attorneys withdrew from representing Bellino on May 27, 2003. Bellino retained new counsel and ultimately settled his dispute with Anderson for $2,427,729.76. The settlement payment was made to acquire Anderson's share in Keno that Anderson had acquired through the constructive trust.

Bellino and Keno (collectively Bellino) commenced this action for professional negligence against McGrath North, Wegner, and Hargens on December 3, 2003, in the district court for Douglas County. Bellino alleged that McGrath North committed legal malpractice because it failed to fully and fairly advise him that he could be liable for a breach of fiduciary duty by forming Keno and bidding for the La Vista keno contract while still associated with Anderson and Lottery. Bellino alleged that McGrath North failed to advise him that a court could impose a constructive trust in favor of Anderson and Lottery on Keno's profits from the La Vista keno contract. He requested judgment against McGrath North for all damages proximately caused by the attorneys' professional negligence.

After a trial, the jury awarded Bellino $1.6 million in damages. McGrath North moved for judgment notwithstanding the verdict or, in the alternative, for a new trial.

McGrath North asserted 12 grounds for judgment notwithstanding the verdict that the district court restated into four: (1) McGrath North's legal advice to Bellino did not constitute malpractice because the attorneys advised him on an unsettled point of Nebraska law, (2) McGrath North's legal advice was not the proximate cause of any damages, (3) Bellino's claim was barred by the statute of limitations, and (4) the jury verdict of $1.6 million in favor of Bellino was contrary to the law and evidence.

(a) Rejection of Argument Regarding
Unsettled Point of Law

McGrath North claimed that Nebraska case law provided an "undefined exception" to the fiduciary duty rule prohibiting

corporate officers and directors from competing against the corporation of which they serve. McGrath North argued that it attempted to qualify Bellino for this exception by advising him to take an "above-board" approach when he incorporated Keno and submitted a bid for the La Vista keno contract in competition with Lottery. It advised Bellino to cooperate with Anderson in submitting a bid on behalf of Lottery even while preparing a bid on behalf of Keno, to continue to allow Lottery to rent space in a building owned by Bellino if Lottery successfully retained the keno contract, and to refrain from submitting a competing bid in the name of Bellino's wife.

McGrath North asserted that even though it was unsuccessful in qualifying Bellino for the "undefined exception" to the fiduciary duty rule, the attorneys had not committed malpractice. The district court found that the evidence, viewed in a light most favorable to Bellino, did not show that the attorneys informed Bellino about any "undefined exception" to the rule prohibiting an officer or director from competing against his current corporation.

### (b) Finding of Proximate Cause

McGrath North next argued that its legal advice was not the proximate cause of any damages to Bellino because there was no evidence of any legally permissible alternative that could have been recommended and pursued other than a buyout. McGrath North argued that the trial evidence showed that the only way that Bellino could have terminated his business relationship with Anderson and retained the La Vista keno contract was to buy out Anderson. According to McGrath North, a buyout was not successful because Bellino did not want to pay the amount Anderson had demanded.

During the trial, Jane Friedman, a retired law professor and one of Bellino's experts, testified that McGrath North could have advised Bellino to file an action for judicial dissolution of Lottery as provided by Nebraska law. McGrath North argued that judicial dissolution was not a viable alternative. It claimed there was no evidence of a deadlock between Bellino and Anderson or in the management of the corporate affairs that caused or threatened an irreparable injury to Lottery. Construing

the evidence in favor of Bellino, the district court found that reasonable minds could conclude that there was a basis for judicial dissolution. The evidence showed that Bellino no longer wanted to be in business with Anderson and sought legal advice to terminate their relationship.

(c) Finding That Bellino's Claim Was Timely Filed

Next, McGrath North argued that Bellino's claim was barred as a matter of law by the 2-year limitations period applicable to claims for professional negligence. McGrath North had advised Bellino concerning Keno between February and July 1998. It argued that Bellino's claim was reasonably discoverable on May 9, 2000, when the district court ruled that Bellino had breached his fiduciary duties as a corporate officer of Lottery. McGrath North contended that Bellino should have reasonably discovered that its advice had been negligent when the judgment was entered by the district court and, therefore, that he should have brought his claim no later than May 9, 2001.

The district court rejected this argument and applied the continuous representation rule. Under this rule, the statute of limitations for a claim of professional negligence is tolled if there is a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence. The evidence showed that Bellino relied on McGrath North's advice when he formed a new corporation and bid for the La Vista keno contract. The court found that Bellino continued to rely on McGrath North's legal advice throughout the ensuing litigation with Anderson. Bellino did not terminate the professional relationship with McGrath North until after this court issued its opinion in *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003). Construing the evidence and the inferences therefrom in Bellino's favor, the court determined that reasonable minds could conclude that a continuous relationship existed between Bellino and McGrath North from 1998 until May 27, 2003, that prevented him from discovering the legal malpractice until after the relationship was terminated. The court thus concluded that McGrath North was not entitled to judgment notwithstanding the verdict based on the statute of limitations.

### (d) Reduction of Damages Award

McGrath North also asserted that the evidence did not support the $1.6 million jury verdict. It claimed that the only damages Bellino sustained as a result of the attorneys' legal advice were the legal and accounting fees incurred while defending the lawsuit filed by Anderson and Lottery.

During the trial, the jury heard testimony from two expert witnesses regarding Bellino's damages. Leo J. Panzer, a certified public accountant, testified that Bellino's damages exceeded $3.1 million. McGrath North presented testimony from another certified public accountant, who said that Bellino did not suffer any damages because he bought out Anderson's interest in Keno, which interest Anderson acquired through the constructive trust. McGrath North argued that Bellino suffered no damages by settling the matter with Anderson because Bellino received a valuable asset in return for the settlement payment.

In sustaining part of McGrath North's motion for judgment notwithstanding the verdict, the court found that McGrath North's negligent advice resulted in the filing of a lawsuit against Bellino for breach of fiduciary duty. Because Bellino was forced to spend a total of $229,036.40 in legal and accounting fees to defend the lawsuit, the court held that McGrath North was liable to Bellino for that amount.

However, the court concluded that the evidence was insufficient to support the remainder of the $1.6 million awarded by the jury. Evidence showed that by settling with Anderson for $2,427,729.76, Bellino had acquired Anderson's constructive interest in the keno operation. To achieve Bellino's goals of terminating the business relationship with Anderson and retaining the La Vista keno contract, the court concluded that Bellino had no other option but to buy out Anderson's share in the keno operation. Stated another way, the court concluded that a buyout was inevitable, even if McGrath North had not advised Bellino in the manner it did. The court thus concluded that the settlement payment was not proximately caused by McGrath North's negligence and modified the judgment to $229,036.40, reflecting only the amount Bellino paid in the Anderson litigation for legal and accounting fees.

## IV. ASSIGNMENTS OF ERROR

In his appeal, Bellino claims the trial court erred in partially sustaining McGrath North's motion for judgment notwithstanding the verdict and reducing the award of damages.

McGrath North asserts 11 assignments of error in its cross-appeal, which we summarize in the following manner: The trial court erred (1) in finding that Bellino's action for professional negligence was timely filed under the applicable statute of limitations; (2) in failing to hold as a matter of law that the conduct of McGrath North was not negligent and did not result in loss to Bellino; (3) in allowing Bellino's witnesses to discuss and the jury to decide whether a sufficient basis existed for judicial dissolution of Lottery, because that determination was a question of law for the district court; and (4) in overruling McGrath North's motion for new trial.

## V. ANALYSIS

### 1. McGrath North's Cross-Appeal

#### (a) Timeliness of Bellino's Claim

McGrath North argues that Bellino's action was barred by the applicable statutes of limitations. The limitations period on a claim for professional negligence is 2 years from the date of the alleged act or omission; however, if the cause of action is not discovered and could not be reasonably discovered within such 2-year period, then the action may be commenced within 1 year from the date of discovery. See Neb. Rev. Stat. § 25-222 (Reissue 1995). The trial court applied the continuous representation rule and found that Bellino timely filed his claim against McGrath North.

McGrath North asserts that Bellino's claim for legal malpractice was reasonably discoverable on May 9, 2000, when the trial court entered judgment in *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003), that Bellino had violated his fiduciary duty as a corporate officer of Lottery. McGrath North thus asserts that Bellino should have filed this action no later than May 9, 2001. We disagree.

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of

the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

■ A claim for professional negligence accrues and the statute of limitations begins to run at the time of the act or omission which is alleged to be the professional negligence that is the basis for the claim. See *Zion Wheel Baptist Church v. Herzog, supra*. A statute of limitations may begin to run at some time before the full extent of damages has been sustained. *Id.* Bellino's claim accrued in 1998, when the attorneys advised him to form Keno and bid for the La Vista keno contract.

■ If a claim for professional negligence is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the exceptions of § 25-222. See *Zion Wheel Baptist Church v. Herzog, supra*. Because Bellino did not file a complaint against McGrath North until December 3, 2003, his claim would be barred unless the limitations period was tolled for some reason. In order for a continuous relationship to toll the statute of limitations regarding a claim for malpractice, there must be a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence. *Id.*

The evidence showed that during the time McGrath North represented Bellino, he continued to reasonably rely on the attorneys' legal advice. Bellino relied on the advice of his attorneys in forming Keno and bidding on the La Vista keno contract. He relied on the attorneys' advice when he was sued by Anderson and Lottery and lost at trial. And he continued to rely on the attorneys' advice throughout the appeal process, including the attorneys' suggestion that Bellino would do better on appeal than by accepting a $1.5 million settlement with Anderson. The professional relationship continued until shortly after this court issued its opinion on March 28, 2003, in *Anderson v. Bellino, supra*. Bellino terminated his professional relationship with McGrath North on May 27. He filed a complaint against McGrath North on December 3. We conclude that the continuous representation rule applies and that the trial court did not err in determining that this action was timely filed.

## (b) Professional Negligence

On cross-appeal, several of McGrath North's arguments concern the district court's refusal to hold as a matter of law that the law firm's conduct did not constitute professional negligence. Specifically, McGrath North argues that the jury verdict was contrary to the evidence and the law, and it contests the court's overruling of its motions for directed verdict and new trial and overruling in part its motion for judgment notwithstanding the verdict. We address McGrath North's arguments in a general manner by considering whether any evidence supported a finding that McGrath North committed professional negligence while representing Bellino.

### (i) Negligent Conduct

In summary, McGrath North argues that it advised Bellino in accordance with Nebraska case law that provides an "undefined exception" to the fiduciary duty rule prohibiting corporate officers and directors from competing against the corporation they serve. The law firm asserts that it did not commit legal malpractice even though it was unsuccessful in qualifying Bellino for this "exception" because it cannot be liable for making an error in judgment over an unsettled point of law.

The district court determined that the evidence in a light most favorable to Bellino established that he was never informed about any exception to the fiduciary duty rule and that when looking at all the evidence in a light most favorable to Bellino, reasonable minds could conclude that McGrath North committed legal malpractice in failing to inform Bellino about an exception to the rule. We conclude that McGrath North's argument concerning the "undefined exception" is without merit.

In *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003), we held that Bellino breached a fiduciary duty owed to Anderson and Lottery. The contract to operate keno in La Vista was a corporate opportunity that Bellino, as a director, diverted from Lottery by forming a new corporation to bid against Lottery. See *id.* The issue in the present case is whether McGrath North negligently advised Bellino, which advice resulted in a loss to Bellino.

■ In a civil action for legal malpractice, a plaintiff alleging attorney negligence must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client. *Borley Storage & Transfer Co. v. Whitted*, 271 Neb. 84, 710 N.W.2d 71 (2006). The general rule regarding an attorney's duty to his or her client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998).

A director or corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or when dealing individually with third persons. *Anderson v. Bellino, supra*; *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 333 N.W.2d 900 (1983). Our opinion in *Anderson v. Clemens Mobile Homes*, 214 Neb. at 288, 333 N.W.2d at 904, contains dicta stating:

> It has been held that although an officer or a director of a corporation is not necessarily precluded from entering into a separate business because it is in competition with the corporation, his fiduciary relationship to the corporation and its stockholders is such that if he does so he must prove by a preponderance of the evidence that he did so in good faith and did not act in such a manner as to cause or contribute to the injury or damage of the corporation, or deprive it of business; if he fails in this burden of proof, there has been a breach of that fiduciary trust or relationship.

This language does not provide a defense to McGrath North.

Although McGrath North asserts that it relied on this language and in good faith believed that a situation was possible in which an officer or director could compete with the corporation and not breach his or her fiduciary duty, the facts in this case clearly do not support such an argument. McGrath North claims it believed Bellino's best strategy was to be "up front and honest" with Anderson when bidding against Lottery for the La Vista keno

contract and to give Lottery an opportunity to also bid on the contract. See brief for appellees on cross-appeal at 37. None of these actions could relieve Bellino of his fiduciary duty not to act adversely to the corporation of which he was the president, a director, and a 50-percent shareholder. McGrath North asserts that Bellino's claim for legal malpractice was based on the attorneys' failure to pursue a particular strategy. And they argue that under Nebraska law, a dispute over a choice of strategies or an error of judgment by the attorney on unsettled law is not actionable. The problem is there was no strategy to pursue.

*Anderson v. Clemens Mobile Homes* does not set forth an "undefined exception" to the factual situation presented in the case at bar. A director or other corporate officer cannot acquire an interest adverse to that of the corporation while acting for the corporation or when dealing individually with third persons. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003); *Anderson v. Clemens Mobile Homes, supra.* An officer or director of a corporation occupies a fiduciary relation toward the corporation and its stockholders and should refrain from all acts inconsistent with his or her corporate duties. *Electronic Development Co. v. Robson*, 148 Neb. 526, 28 N.W.2d 130 (1947).

In addition, this court has held that shareholders in a close corporation owe one another the same fiduciary duty as that owed by one partner to another in a partnership. *Russell v. First York Sav. Co.*, 218 Neb. 112, 352 N.W.2d 871 (1984), *disapproved on other grounds, Van Pelt v. Greathouse*, 219 Neb. 478, 364 N.W.2d 14 (1985.). See, also, *I. P. Homeowners v. Radtke,* 5 Neb. App. 271, 558 N.W.2d 582 (1997) (holding that stockholders in close corporation owed fiduciary duty to corporation). Partners must exercise the utmost good faith in all their dealings with the members of the firm and must always act for the common benefit of all. *Bode v. Prettyman*, 149 Neb. 179, 30 N.W.2d 627 (1948). A partner has a duty to refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership. Neb. Rev. Stat. § 67-424 (Reissue 2003). Accordingly, Bellino, as the president, a director, and a shareholder in a close corporation, had a duty to act in the best interests of Lottery. No justification

for his conduct existed in Nebraska law, and McGrath North negligently advised Bellino to act contrary to such duty.

We reject McGrath North's argument that its advice to Bellino was not negligent. The trial court was correct in refusing to find as a matter of law that McGrath North's conduct did not constitute professional negligence.

### (ii) Proximate Cause

McGrath North claims the trial court erred in failing to hold as a matter of law that the conduct of the attorneys was not the proximate cause of Bellino's damages. A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005). McGrath North argues that its advice did not proximately cause Bellino's damages because there was no evidence of any legally permissible alternative that could have been recommended other than a buyout. However, the record shows that expert witnesses for Bellino testified that, given Bellino's goals and the severely strained relationship between him and Anderson, McGrath North should have considered, among other alternatives, judicial dissolution.

Friedman, a retired law professor, testified that McGrath North gave Bellino the wrong advice in telling him to submit the competing bid. Friedman stated that dissolving the corporation was an option that should have been considered. Lowell Moore, an attorney, also testified that an action to dissolve the company was an option available to Bellino. After being instructed on proximate cause and that the measure of damages was the amount of loss actually sustained as a proximate result of the attorneys' conduct, the jury found in favor of Bellino.

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Rod Rehm, P.C. v. Tamarack Amer.*, 261 Neb. 520, 623 N.W.2d 690 (2001). On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom

the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006). To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.* If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Rod Rehm, P.C. v. Tamarack Amer., supra.*

Giving Bellino the benefit of all proper inferences deducible from the relevant evidence, the district court found that reasonable minds could conclude that other legal options were available to Bellino, options which should have been suggested by his lawyers. We conclude that the trial court did not err in refusing to decide as a matter of law that McGrath North's negligence did not proximately cause Bellino's loss.

### (c) Testimony Regarding Action to Dissolve Corporation

Bellino's expert witnesses testified that McGrath North should have considered and advised Bellino of other alternatives, including the possibility of a dissolution action. McGrath North asserts that the district court erroneously delegated its duty to the jury to decide whether the uncontested facts formed a basis for Bellino to bring a dissolution action under the dissolution statute, Neb. Rev. Stat. § 21-20,162 (Cum. Supp. 2006). The record does not support this assertion. The jury was not instructed to determine whether a basis existed for dissolution but whether Bellino had proved by the greater weight of the evidence (1) the existence of an attorney-client relationship, (2) negligence by McGrath North, (3) proximate cause, and (4) damages.

McGrath North also claims the district court erred in allowing Bellino's witnesses to discuss whether a sufficient basis existed for judicial dissolution of Lottery, since that determination was a question of law for the district court. It relies on *Sports Courts of Omaha v. Brower*, 248 Neb. 272, 534 N.W.2d 317 (1995), in which this court held that expert testimony concerning a

question of law is generally not admissible in evidence. In *Sports Courts of Omaha*, a law professor opined that the actions taken by an attorney on behalf of his client with regard to certain stock constituted a disposition of collateral under the Uniform Commercial Code. We found that because there was no dispute as to the actions of the attorney, whether those actions constituted a disposition of collateral as contemplated in the code was a matter of statutory interpretation, which was a question of law.

In the present case, Bellino's experts did not interpret the judicial dissolution statute. Friedman explained generally what it means to dissolve a corporation. She opined that a lawyer of ordinary skill and prudence would have researched the law, including the statutes, and she concluded that dissolving the corporation would have been a viable option for Bellino. Neither did Moore attempt to interpret Nebraska law. He stated that when the owners of a small corporation cannot agree, a dissolution action is a procedure available to them whereby their interests could be divided. He opined that a dissolution action was an option for Bellino.

In *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999), we held that expert testimony in an action for legal malpractice is normally required to establish an attorney's standard of conduct in a particular circumstance and whether the attorney's conduct was in conformity therewith. The required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances. *Id.* Although this general standard is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact. *Id.*

To determine how the attorney should have acted in a given case, the jury will often need expert testimony describing what law was applicable to the client's situation. A " " "jury cannot rationally apply a general statement of the standard of care unless it is aware" ' of what the common attorney would have done in similar circumstances." *Id.* at 124, 589 N.W.2d at 124. Testimony about the relevant law is often essential to assist the jury in determining what knowledge is commonly possessed by

lawyers acting in similar circumstances and whether the attorney exercised common skill and diligence in ascertaining the legal options available to his or her client. Attorneys represent their clients in legal matters; thus, in an action for professional negligence, the law is ingrained in the canvas upon which the picture of the attorney-client relationship is painted for the jury.

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Epp v. Lauby*, 271 Neb. 640, 715 N.W.2d 501 (2006). We conclude that the district court did not abuse its discretion in permitting Bellino's expert witnesses to testify that a dissolution action was a viable option.

### (d) Motion for New Trial

To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007). Although McGrath North assigns as error the overruling of its motion for new trial, no argument is made in support of this assignment. Thus, we do not address it.

### 2. BELLINO'S APPEAL: AWARD OF DAMAGES

The jury found that the negligence of Bellino's attorneys caused him $1.6 million in damages. The district court in part sustained McGrath North's motion for judgment notwithstanding the verdict, concluded that the evidence did not support the $1.6 million verdict, and reduced the award of damages to $229,036.40, the amount Bellino paid for legal and accounting services in defending the Anderson lawsuit. The court reasoned that Bellino's goals were to terminate his business relationship with Anderson and retain the La Vista keno contract. In order to attain his goals, the court found, Bellino would have been required to buy out Anderson, even if the advice of the attorneys had not been negligent. It therefore concluded that the only loss to Bellino proximately caused by the negligence of McGrath North was the lawsuit brought against him by Anderson. Bellino appealed and has assigned the reduction of damages as error.

In reviewing the district court's grant of judgment notwithstanding the jury verdict, we are guided by well-established principles. To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006). The party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Id.*

The jury was instructed that the general measure of damages in a legal malpractice action is the amount of loss actually sustained by the claimant as a proximate result of the attorney's conduct. See *Eno v. Watkins*, 229 Neb. 855, 429 N.W.2d 371 (1988). A proximate cause is a cause that produces a result in a natural and continuous sequence and without which the result would not have occurred. *Smith v. Colorado Organ Recovery Sys.*, 269 Neb. 578, 694 N.W.2d 610 (2005).

In early 1998, Bellino sought to end his business relationship with Anderson. Each of them was a 50-percent shareholder in Lottery and an officer and a director. Lottery had a keno contract with La Vista that was set to expire July 31, 1998. Bellino wanted to continue in the keno business without Anderson. The evidence, considered in a light most favorable to Bellino, indicated that Bellino was not properly informed of his fiduciary duties as the president, a director, and a shareholder of Lottery, a close corporation. Further evidence indicated he was not properly informed that a constructive trust could result. Erroneous legal advice that causes the client to breach a fiduciary duty to such a corporation can be devastating to the client. Bellino was forced to remain in business with Anderson, via the constructive trust, under a 10-year keno contract with La Vista.

Bellino presented expert testimony at trial concerning the damages proximately caused by the negligent advice of McGrath North. Panzer, a certified public accountant, testified that Bellino settled with Anderson in July 2004 to end the constructive trust, separate from Anderson, and maintain the keno operation. Panzer testified that the monetary loss sustained by Bellino due to the legal advice given by his attorneys exceeded $3.1 million. This sum included: legal and accounting fees incurred in

the Anderson litigation—$176,373.48 and $52,662.92, respectively; settlement payments to Anderson totaling $2,427,729.76; interest in the amount of $190,182.60 on personal loans taken by Bellino for the settlement payments; and the lost economic benefit, calculated at $325,773.27, of money Bellino was forced to use to settle with Anderson.

In an action for legal malpractice, the plaintiff must establish that but for the alleged negligence of the attorney, the plaintiff would have obtained a more favorable judgment or settlement. *Viner v. Sweet*, 30 Cal. 4th 1232, 70 P.3d 1046, 135 Cal. Rptr. 2d 629 (2003). See *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000). The jury found that Bellino had sustained damages in the amount of $1.6 million as a proximate result of McGrath North's negligent representation. Sufficient evidence was presented to the jury to support a finding that these damages included the cost to Bellino as a result of the Anderson settlement in July 2004.

In its motion for judgment notwithstanding the verdict, McGrath North argued that the jury's verdict was based on the difference between (1) the amount ($1.5 million) for which Anderson had offered to settle the case after the trial and before this court's ruling in *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003), and (2) the expenses Bellino actually spent to settle the case after the appeal, which amount McGrath North contended was approximately $3.1 million. McGrath North argued that the jury's verdict was improper because it was based on Bellino's own decision to reject Anderson's settlement offer.

The district court determined that at some point, regardless of McGrath North's negligent advice, Bellino would have been required to buy out Anderson in order to terminate their business relationship and retain the keno contract. Because a buyout was inevitable, the court found that the payment to Anderson could not be proximately caused by McGrath North's negligence. The court determined that the difference in the settlement price before and after the litigation was concluded was not proximately caused by McGrath North because Bellino made the ultimate decision to reject the first offer. We disagree.

Before the litigation in *Anderson v. Bellino, supra*, was concluded, Anderson offered to settle for $1.5 million. McGrath

North advised Bellino that he could "do much better" on appeal. The issue is whether the legal advice given to Bellino increased the cost of severing his business relationship with Anderson.

McGrath North represented Bellino throughout the litigation with Anderson. Before trial, Bellino's attorneys told Bellino he would win on the points of law. After Bellino lost at trial, he was assured by counsel that the judge's ruling was wrong.

There was evidence that in December 2002 (i.e., before this court affirmed the judgment in *Anderson v. Bellino, supra*), Anderson offered to settle the litigation and yield his interest in the keno operation to Bellino for $1.5 million. Bellino was told by his legal counsel that his chances for a successful appeal of the district court's decision were favorable and that the appeal would result in a better outcome than a $1.5 million settlement. Panzer, who participated in discussions concerning a possible settlement, said that counsel persistently told Bellino that after the appeal was decided, Bellino and Anderson would "split the baby," but there was no suggestion that Bellino would be required to keep paying Anderson from Keno's profits for the entirety of the La Vista contract. Bellino said that he continued to move forward with his appeal to this court due to his lawyers' advice.

That advice concerning the appeal was wrong. The law in Nebraska is clear that a person who is an officer, director, and shareholder of a closely held corporation has a fiduciary duty not to act adversely to that corporation. Given the facts in this case, it was inevitable that a court would determine Bellino had breached his fiduciary duty to Lottery.

Although the decision whether to settle the controversy is ultimately left to the client, see *Wood v. McGrath, North*, 256 Neb. 109, 589 N.W.2d 103 (1999), evidence showed that Bellino relied greatly on the ongoing legal advice of McGrath North that he would prevail on appeal when he chose to forgo settlement and wait for the appeals process to run its course. We have recognized that

> "'litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we [have] insist[ed] that the lawyers of our state advise clients with respect to settlements with

the same skill, knowledge, and diligence with which they pursue all other legal tasks.'"

*McWhirt v. Heavey*, 250 Neb. 536, 546, 550 N.W.2d 327, 334 (1996).

In *Streber v. Hunter*, 221 F.3d 701 (5th Cir. 2000), attorneys incorrectly advised their client on how to treat a large sum of money for tax purposes, and the Internal Revenue Service issued a notice of deficiency against the client. Evidence indicated that the Internal Revenue Service would have settled the case but that the attorneys insisted the client would win at trial. Based on that advice, the client did not settle. The client lost at the tax trial, and the judgment against her was substantially more than the settlement would have been.

The client brought an action for legal malpractice against the attorneys. Following a trial, the jury returned a verdict in favor of the client. The largest portion of damages represented the difference between the amount of money the client would have paid the Internal Revenue Service had the attorneys advised her correctly and the amount she eventually had to pay. The attorneys appealed.

The U.S. Court of Appeals for the Fifth Circuit considered whether the evidence supported the jury's determination that the lawyers' overall conduct, particularly their advice that the client would win at the tax trial and that therefore, she should not settle, fell below the standard of care. Expert testimony had been presented that the attorneys' tax advice had been wrong from the start and that the attorneys failed to adequately inform the client of the apparent outcome of the tax case. The client testified that she would have settled but did not because the attorneys told her she would be successful in the tax trial. The court found that based on the facts and in light of the applicable tax law, the attorneys performed negligently by failing to advise the client to settle. The evidence, reviewed in a light favorable to the client, was sufficient to sustain the jury's damage award.

In the present case, Bellino's attorneys advised him to set up Keno and bid against Lottery for the La Vista contract. Moore, one of Bellino's experts, testified that this advice caused Bellino "to become involved in litigation where there was virtually no chance of him being successful." Bellino continued to rely on

his attorneys' advice throughout the resulting litigation. Moore testified that McGrath North fell below the standard of care by not advising Bellino that he was likely to lose the case. The jury could reasonably have inferred that the failure of counsel to properly advise Bellino of the apparent outcome of his appeal was a proximate cause of his decision not to pay the $1.5 million which Anderson requested to settle the matter.

The district court found that Bellino would inevitably have to buy out Anderson but did not consider that the price of such buyout could have been increased as a result of McGrath North's negligent representation. The jury could reasonably have concluded, based on the evidence, that it cost Bellino more to purchase Anderson's interest after the litigation and judgment against Bellino than before such judgment. The jury could reasonably have determined that Anderson's settlement offer of $1.5 million established a baseline number for what it would have cost Bellino to buy out Anderson.

After Bellino did not accept Anderson's offer, Bellino's appeal continued until this court affirmed the judgment in favor of Anderson. Friedman, one of Bellino's experts, testified that Bellino "suffered terribly monetarily after the [Nebraska] Supreme Court rendered its opinion" in *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003). The constructive trust was imposed, and Bellino was locked into the existing arrangement for several more years.

The evidence, viewed favorably to Bellino, indicated that following the conclusion of the appeal, it cost Bellino in excess of $3.1 million to attain his goal of separating from Anderson and continuing the keno operation. The settlement with Anderson satisfied all obligations and sums owed to Anderson as a result of the constructive trust, including all profits currently due Anderson or to which he would be entitled in the future under the La Vista keno contract. The jury could reasonably have concluded that but for the negligence of McGrath North, Bellino would have paid substantially less to attain his stated goals.

On its motion for judgment notwithstanding the verdict, McGrath North was deemed to have admitted as true all the relevant evidence favorable to Bellino and Bellino was entitled to the benefit of all proper inferences deducible from the relevant

evidence. See *Munstermann v. Alegent Health*, 271 Neb. 834, 716 N.W.2d 73 (2006). The amount of damages awarded by the jury was supported by the evidence, bore a reasonable relationship to the elements of the damages proved, and was not such that reasonable minds could draw but one conclusion on the issue of damages. See *Genthon v. Kratville*, 270 Neb. 74, 701 N.W.2d 334 (2005).

We conclude that the district court erred in sustaining the motion for judgment notwithstanding the verdict and in reducing the damages to $229,036.40.

## VI. CONCLUSION

The district court erred in partially sustaining McGrath North's motion for judgment notwithstanding the verdict and disturbing the jury verdict. We reverse the district court's order reducing the award of damages. In all other respects, the court's order and rulings are affirmed. We remand the cause to the district court with direction to reinstate the jury verdict and judgment in favor of Bellino.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

McCORMACK, J., not participating.