Muhannad into moving for a mistrial. He instead focused on gross negligence. And gross negligence is insufficient under the narrow exception set forth in *Oregon v. Kennedy*.

Because the prosecutor did not intend to goad Muhannad into moving for a mistrial, Muhannad maintained primary control over the course of events following Gobel's testimony. Muhannad chose to waive the right to have his trial completed by a particular tribunal, and his plea in bar was properly denied.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court denying the plea in bar.

AFFIRMED.

Heavican, C.J., not participating in the decision.

———————————

Kevyne A. Guinn et al., Trustees of the trusts created under the Bernard M. O'Daniel Revocable Trust Agreement dated October 22, 1998, as amended by first amendment to the Bernard M. O'Daniel Revocable Trust Agreement dated March 28, 2001, and Personal Representatives of the Estate of Bernard M. O'Daniel, deceased, and Elizabeth M. O'Daniel, appellants and cross-appellees, v. Robert J. Murray and Lamson, Dugan & Murray, LLP, a Nebraska limited liability partnership, appellees and cross-appellants.

___ N.W.2d ___

Filed September 27, 2013.    No. S-12-165.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was

granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3.  **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

4.  **Directed Verdict: Evidence.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

5.  **Limitations of Actions: Appeal and Error.** The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong.

6.  **Limitations of Actions: Malpractice.** If the facts in a case are undisputed, the issue as to when the professional negligence statute of limitations began to run is a question of law.

7.  **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

8.  **Limitations of Actions: Negligence: Torts.** In a negligence action, a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs. This principle has been referred to as "the occurrence rule."

9.  **Limitations of Actions: Negligence.** A claim for professional negligence accrues and the statute of limitations begins to run at the time of the act or omission which is alleged to be the professional negligence that is the basis for the claim.

10. **Limitations of Actions: Damages.** A statute of limitations may begin to run at some time before the full extent of damages has been sustained.

11. **Limitations of Actions: Negligence.** If a claim for professional negligence is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the exceptions of Neb. Rev. Stat. § 25-222 (Reissue 2008).

12. **Limitations of Actions: Words and Phrases.** "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed.

13. **Limitations of Actions: Malpractice.** In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action.

14. **Malpractice: Damages: Words and Phrases.** In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss. Legal injury is not damage; damage is the loss resulting from the misconduct.

15. **Limitations of Actions: Malpractice.** Under the continuous representation rule, the statute of limitations for a claim of professional negligence is tolled if there is a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence.

16. ____: ____. Continuity does not mean mere continuity of the general professional relationship, and the continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship.

17. **Summary Judgment: Appeal and Error.** The denial of a summary judgment motion is neither appealable nor reviewable.

18. **Summary Judgment: Moot Question: Appeal and Error.** Whether a motion for summary judgment should have been granted generally becomes moot after trial. This is because the overruling of such a motion does not decide any issue, but merely indicates that the trial court was not convinced that the moving party was entitled to judgment as a matter of law. After trial, the merits should be judged in relation to the fully developed trial record, not whether a different judgment may have been warranted on the record at summary judgment.

19. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.

20. **Malpractice: Attorney and Client.** In a legal malpractice action, the required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

21. ____: ____. Although the general standard of an attorney's conduct is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact.

22. **Attorney and Client: Expert Witnesses.** Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith.

23. **Summary Judgment: Expert Witnesses: Testimony.** A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

W. Patrick Betterman and Lindsay E. Pedersen, of Law Offices of W. Patrick Betterman, for appellants.

James M. Bausch and Andre R. Barry, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

Heavican, C.J., Connolly, and Stephan, JJ., and Irwin, Judge.

Per Curiam.

## NATURE OF CASE

In this legal malpractice case, clients sued an attorney and his firm alleging professional negligence in connection with the administration of an estate. The clients, who are relatives of the decedent, Bernard M. O'Daniel, appeal. The attorney and law firm, Robert J. Murray and Lamson, Dugan & Murray, LLP, cross-appeal. For the reasons explained below, we affirm the judgment entered in favor of Murray and the firm on the clients' claim that they failed to properly disclose a conflict of interest, and we reverse the judgments entered dismissing as time barred the clients' claims regarding the propriety of advice regarding disclaiming certain property and associated tax return elections. We remand the cause for further proceedings on these two claims. Murray and the firm cross-appeal regarding a preliminary ruling made on August 22, 2011, and we find no merit to the assignment of error in the cross-appeal.

## STATEMENT OF FACTS

The appellants and cross-appellees in this case are Bernard's widow, Elizabeth M. O'Daniel, and three of Bernard's six surviving children, Kevyne A. Guinn, Michael F. O'Daniel, and Maureen E. Toberer. The children are parties to this case in their capacities as personal representatives of Bernard's estate and as trustees of trusts created by Bernard. The appellants and cross-appellees are hereinafter collectively referred to as "the O'Daniels."

The O'Daniels filed a professional malpractice action against Murray and his law firm, Lamson, Dugan & Murray, on June 12, 2006. The name "Murray" is used herein to refer both to Murray individually and to the defendants collectively now appearing as appellees and cross-appellants. The O'Daniels generally alleged that Murray committed professional negligence with regard to the administration of Bernard's estate and

that such negligence caused the estate to incur additional estate taxes and additional legal fees.

After Bernard died in July 2001, Murray met with Bernard's children to discuss estate matters. Murray also represented O'Daniel Motor Center (ODMC), the stock of which was a significant asset of Bernard's estate. At the first meeting, Murray advised the children of his representation of both ODMC and the estate and told them he could be fair to all parties but encouraged them to retain their own counsel if they so desired.

As part of the estate administration, Murray advised the O'Daniels that Elizabeth should disclaim her interest in a portion of Bernard's estate, including his ODMC stock, so that such interest would instead be distributed to the children. Murray's advice included plans for ODMC to purchase or redeem the stock that would pass to the children other than Michael, who would be left in control of the ODMC business. Murray advised the children regarding the disclaimer option at the initial meeting after Bernard's death in July 2001 and in subsequent communications in September, October, and November 2001. In materials provided to the children, Murray's calculations indicated that if some of the property passed directly to the children from Bernard's estate rather than passing through Elizabeth's estate before eventually passing to the children, there could be overall estate tax savings to the family, because some of the property that would eventually pass to the children would be subject to tax in Bernard's estate rather than leaving all of the property to be subject to tax in Elizabeth's estate. The materials indicated that if Elizabeth did not disclaim any property, Bernard's estate would pay no tax and Elizabeth's estate would pay tax on the entire estate; the materials further indicated that if Elizabeth did disclaim a portion of the property, both Bernard's estate and Elizabeth's estate would pay tax but that the combined tax would be less than if the entire estate were taxed in Elizabeth's estate. One of the stated assumptions in Murray's calculation of potential estate tax savings was that Elizabeth was not expected to live past December 31, 2003.

In 1998, Elizabeth had executed a power of attorney naming two of the children, Guinn and Michael, as coattorneys in fact. The power of attorney stated that the attorney in fact had authority to "deal with [her] real or personal property in any manner that [the attorney in fact] may deem appropriate." The power of attorney further stated that such authority included but was not limited to certain specified powers which included, inter alia, the "[p]ower to make gifts or execute documents and instructions in furtherance of my estate plan or which may otherwise be advantageous for estate and gift tax planning purposes." In November and December 2001, Guinn and Michael executed disclaimers on Elizabeth's behalf disclaiming her interest in the ODMC stock and in a portion of a promissory note from ODMC to Bernard.

The estate was eligible to make a qualified terminable interest property (QTIP) election on its estate tax return. The QTIP election allowed the estate to shield from tax the property that passed to a marital trust for the benefit of Elizabeth. Murray prepared the estate tax return which was signed by the personal representatives and filed on April 9, 2002. When preparing the return, Murray excluded the disclaimed property from the QTIP election. Based on the assumption that the disclaimers were effective, Murray determined that the disclaimed property would not pass to the marital trust and therefore was not eligible for the QTIP election. The result was that the disclaimed property was subject to estate tax, and the estate owed over $600,000 in federal and state estate taxes.

In 2003, the Internal Revenue Service (IRS) began an audit of the estate's return. While the audit was underway, some of the O'Daniels were concerned with Murray's handling of the estate and consulted with other attorneys. The O'Daniels assert that they first learned in March 2004 that the disclaimers were not valid. Based on the advice of new attorneys, the O'Daniels believed that the disclaimers were not valid because Guinn and Michael, who signed the disclaimers using Elizabeth's power of attorney, stood to benefit from the disclaimers and therefore were not authorized under the power of attorney to execute the disclaimers. They further believed that the disclaimers were

not effective to achieve their intended purpose because under Bernard's will, his assets were to be distributed to a trust that would benefit Elizabeth rather than to Elizabeth herself and therefore Elizabeth had no interest to disclaim. On April 6, 2004, the O'Daniels and Murray signed a tolling agreement that tolled the running of the statute of limitations with respect to any legal malpractice claims that could have been timely brought prior to that date.

In 2005, the O'Daniels took steps to undo the distribution of property that had been made based on Murray's advice regarding the disclaimers. They also filed a claim for a refund of estate taxes on the basis that because the purportedly disclaimed property was not validly disclaimed, it should have passed to the marital trust for Elizabeth and therefore should have been included in the QTIP election and should not have been subject to estate tax. The IRS denied the requested change. The steps the O'Daniels undertook caused them to incur additional legal fees and related expenses.

The O'Daniels filed this malpractice action against Murray on June 12, 2006. The claims they made in their complaint have been treated in these proceedings as consisting of three general claims of professional negligence: (1) Murray failed to obtain the O'Daniels' informed consent with regard to the conflict of interest in his dual representation of ODMC and Bernard's estate, (2) Murray erroneously advised the O'Daniels to execute disclaimers that should be regarded as invalid and ineffective, and (3) Murray failed to include the purportedly disclaimed property in the QTIP election and therefore caused the estate to incur additional taxes.

After numerous proceedings, motions, hearings, and two trials, the district court resolved all the claims. At issue with respect to each claim was whether the claim was barred by the 2-year statute of limitations for professional negligence actions under Neb. Rev. Stat. § 25-222 (Reissue 2008) as of April 6, 2004, when the parties signed the tolling agreement. It was ultimately determined that each of the claims was barred by the statute of limitations. However, such conclusion was reached as to each claim by a different procedural route—the conflict of interest issue was determined based on

a jury trial, the adequacy of advice regarding the disclaimers issue was resolved based on a motion for summary judgment, and the QTIP election issue was resolved based on a motion for directed verdict after a second jury trial ended in a mistrial.

With regard to the claim that Murray did not obtain consent to the dual representation, the district court rejected Murray's motion for summary judgment based on the statute of limitations. The court originally determined in an order filed March 3, 2011, that although Murray disclosed the dual representation in July 2001 and the O'Daniels knew at that time that there was a conflict of interest, the O'Daniels did not then know that Murray had failed to obtain adequate consent to the dual representation and they did not discover such failure until after the original limitations period had expired. After the parties renewed their motions for summary judgment, the court determined in an order filed April 11, 2011, that contrary to the court's prior order, there were issues of material fact regarding whether the O'Daniels were on notice during the limitations period that Murray had failed to obtain adequate consent. The court therefore granted Murray's motion for a separate trial to a jury on the statute of limitations issue with respect to the conflict of interest claim. At the conclusion of the trial on the conflict of interest claim, the jury returned a verdict in favor of Murray on the statute of limitations defense. The court entered judgment based on the jury's verdict.

With regard to the claim that Murray erroneously advised the O'Daniels with respect to the disclaimers, the court concluded in response to Murray's motion for summary judgment that the claim was barred by the statute of limitations. In the initial March 3, 2011, order, the court found that the statute began to run when the disclaimers were executed in November and December 2001 and that neither the discovery rule nor the continuous representation rule applied to toll the statute of limitations. The court noted Guinn's deposition testimony that the tax liability reported on the estate's return in April 2002 was greater than what she expected the estate would have to pay. The court reasoned that the knowledge of "a higher tax liability put [the O'Daniels] on inquiry notice that the disclaimers did

not work as intended." Because the O'Daniels were on inquiry notice in April 2002, which was within 2 years after the alleged negligence occurred in late 2001, the discovery rule did not toll the statute of limitations. The court further reasoned that Murray's representation of the estate during the IRS audit was not an attempt to reverse the unfavorable results of his advice regarding disclaimers and that therefore, the continuous representation rule did not toll the statute of limitations. The court concluded that the 2-year statute of limitations had run and that the claim was barred in 2003, before the parties executed the tolling agreement on April 6, 2004. The court granted summary judgment in favor of Murray on this claim.

Although the court concluded that the disclaimer advice claim was barred by the statute of limitations, "for the sake of thoroughness," the court addressed the merits of the O'Daniels' assertions that the disclaimers were not effective or valid. In the initial March 3, 2011, order, the court concluded, inter alia, that the disclaimers were invalid because although the power of attorney executed by Elizabeth gave the attorneys in fact the authority to make gifts for tax planning purposes, it did not specifically grant her attorneys in fact the power to make gifts to themselves.

With regard to the claim that Murray failed to make a QTIP election for the purportedly disclaimed property, a jury trial was scheduled on issues related to the claim. Prior to that trial, the court, in an order entered August 22, 2011, made various rulings in response to the O'Daniels' motion for partial summary judgment. These included a ruling that "it should have been clear that the Disclaimers were invalid and the purportedly disclaimed property must be included in the QTIP election." The substance of this aspect of the August 22 ruling is challenged by Murray on cross-appeal.

A trial was conducted and resulted in a mistrial when the jury was unable to reach a verdict. The court thereafter considered the parties' motions for directed verdict and concluded that Murray was entitled to a directed verdict because the claim for failure to make the QTIP election for the purportedly disclaimed property was barred by the statute of limitations.

In an order filed February 1, 2012, the court reasoned that although the estate tax return was filed on April 9, 2002, which date was within 2 years prior to the date of the tolling agreement on April 6, 2004, the filing of the return was not the wrongful act at issue. Instead, the court found that "the wrongful act forming the basis of this claim actually occurred in 2001 when Murray provided the erroneous advice with respect to the disclaimers." The court cited an Arkansas case in which the Arkansas Supreme Court determined that the professional malpractice statute of limitations began to run when an accountant gave erroneous advice and not when he later completed a tax return in accordance with such advice. The court in this case noted that at the time the estate tax return was filed, Murray acted on the assumption that the disclaimers were valid and therefore determined that the property was not eligible for the QTIP election. The court concluded that for the same reasons the claim for negligent advice regarding the disclaimers was barred, the claim for failure to make the QTIP election was also barred by the statute of limitations.

The court further found that even if the claim was not barred by the statute of limitations, the O'Daniels failed to establish a prima facie case of legal malpractice because they failed to introduce evidence at trial showing that Murray's negligence was the proximate cause of their damages. The court stated that although the O'Daniels presented evidence that the estate paid taxes of over $600,000, such evidence alone was "insufficient to lead to an inference that that amount was the result of negligence on the part of Murray" and that "there was no evidence indicating that the Estate would not have had to pay the same amount had Murray included the purportedly disclaimed property in the QTIP election." The court concluded that because the O'Daniels "failed to introduce any evidence for which the jury could determine proximate cause and damages," Murray was entitled to judgment as a matter of law. The court therefore sustained Murray's motion for directed verdict and entered judgment in Murray's favor on the QTIP election claim.

The O'Daniels appeal, and Murray cross-appeals.

## ASSIGNMENTS OF ERROR

The O'Daniels generally claim that the district court erred when it concluded that their claims were barred by the statute of limitations. The O'Daniels make additional assignments of error that because of our disposition of this appeal, we need not reach.

On cross-appeal, Murray refers us to the following language in the August 22, 2011, order that "it should have been clear that the Disclaimers were invalid and the purportedly disclaimed property must be included in the QTIP election" and, rephrased, asserts on cross-appeal that in the event of a remand, given this ruling, the district court improperly removed the issue of fact as to whether Murray's conduct fell below the standard of conduct with respect to the disclaimer advice from the jury's consideration.

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Shada v. Farmers Ins. Exch., ante* p. 444, ___ N.W.2d ___ (2013). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3] In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

[4] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Credit Bureau Servs. v. Experian Info. Solutions*, 285 Neb 526, 828 N.W.2d 147 (2013).

[5-7] The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). If the facts in a case are undisputed, the issue as to when the professional negligence statute of limitations began to run is a question of law. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006). An appellate court independently reviews questions of law decided by a lower court. *Shada v. Farmers Ins. Exch., supra*.

## ANALYSIS

As tried in the district court, this malpractice action involves three claims: (1) that Murray failed to obtain consent with regard to a conflict of interest, (2) that Murray erroneously advised the O'Daniels to execute disclaimers that were invalid and ineffective, and (3) that Murray's failure to include disclaimed property in the QTIP election caused the estate to incur unnecessary taxes. The O'Daniels make various assignments of error which relate to one or more of the claims; in our analysis, we consider in turn each of the three claims and the assignments of error related to each claim. The district court ultimately resolved each of the claims in this action by concluding that the claim was barred by the statute of limitations, and we generally resolve this appeal by deciding issues related to the statute of limitations. We therefore begin our analysis with a review of statute of limitations concepts that are applicable to all three legal malpractice claims before we consider each claim separately.

*Statute of Limitations Concepts*
*Applicable to the O'Daniels'*
*Three Claims*.

Each of the O'Daniels' claims is a legal malpractice claim, and therefore, the applicable statute of limitations is § 25-222, which provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Under the statute, the action must be commenced within 2 years of the alleged act of negligence unless the action was not or could not reasonably be discovered within that 2-year period, in which case it must be commenced within 1 year after it is discovered or should be discovered.

[8-10] In a negligence action, a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs. *Carruth v. State, supra*. This principle has been referred to as "'the occurrence rule.'" *Id*. at 438, 712 N.W.2d at 580. A claim for professional negligence accrues and the statute of limitations begins to run at the time of the act or omission which is alleged to be the professional negligence that is the basis for the claim. *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007). A statute of limitations may begin to run

at some time before the full extent of damages has been sustained. *Id*.

In the present case, the statute of limitations analysis focuses on April 6, 2004, when the parties signed a tolling agreement to the effect that the statute would be tolled for any action that was not already barred as of that date. Therefore, any claim on which the limitations period had not run prior to April 6, 2004, was not barred when the O'Daniels filed their complaint on June 12, 2006. Under § 25-222, a claim was barred if it had accrued prior to April 6, 2002, unless the discovery rule applied or the statute was tolled for another reason.

[11] If a claim for professional negligence is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the exceptions of § 25-222. *Bellino v. McGrath North, supra*. The O'Daniels in this case argue that both the discovery rule and the continuous representation rule toll the running of the statute of limitations on their claims.

[12-14] The discovery rule as it pertains to professional negligence claims is set forth in §25-222, quoted above. By the terms of the statute, the discovery rule applies only when the cause of action is not discovered and could not reasonably have been discovered within the 2-year limitations period. If the discovery rule applies, then the limitations period is 1 year from the time the cause of action is or could have been discovered. "Discovery," in the context of statutes of limitations, refers to the fact that one knows of the existence of an injury and not that one has a legal right to seek redress. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994). It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed. *Id*. In a professional negligence case, "discovery of the act or omission" occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action. *Gering - Ft. Laramie Irr. Dist. v. Baker*, 259 Neb. 840, 612 N.W.2d 897 (2000). In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss.

*Id*. Legal injury is not damage; damage is the loss resulting from the misconduct. See *id*.

[15,16] This court has also recognized that the continuous representation rule may toll the statute of limitations in a legal malpractice case. Under this rule, the statute of limitations for a claim of professional negligence is tolled if there is a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence. *Bellino v. McGrath North*, 274 Neb. 130, 738 N.W.2d 434 (2007). However, we have limited the reach of the continuous representation rule by stating that continuity does not mean mere continuity of the general professional relationship and that the continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship. See *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

We review statute of limitations issues regarding the O'Daniels' three claims in the context of the standards set forth above.

*Conflict of Interest Claim.*

We first consider the claim that Murray committed legal malpractice when he failed to obtain the O'Daniels' informed consent with regard to the conflict of interest in his dual representation of ODMC and the estate. The O'Daniels' primary contention on appeal with respect to this claim is that the district court erred when it failed to grant summary judgment in their favor on the substance of this claim. After the district court denied the summary judgment about which the O'Daniels complain, the case proceeded to trial. The jury found this claim to be time barred, and the district court entered judgment accordingly. We affirm.

The conflict of interest claim involves Murray's alleged failure to obtain consent to the dual representation, which consent should have been obtained when Murray began the dual representation in July 2001. Unless the discovery rule applied or the statute was tolled, the 2-year limitations period under § 25-222 ended for this claim in 2003, before the parties executed the tolling agreement on April 6, 2004.

At issue in the district court was whether the O'Daniels discovered or could have discovered their cause of action before the 2-year limitations period ended in 2003. The court twice considered cross-motions for summary judgment with respect to the conflict of interest claim before it ultimately submitted the statute of limitations issue to a jury. The court was initially of the view that the O'Daniels did not discover that Murray had failed to obtain adequate consent to the dual representation until after the expiration of the original 2-year limitations period. The court later determined that contrary to its prior order, there were issues of material fact regarding whether the O'Daniels were put on notice during the limitations period that Murray had failed to obtain informed consent; the court noted in its order that if the O'Daniels were on inquiry notice of the claim during the original limitations period, neither the discovery rule nor the continuous representation rule tolled the limitations period. The statute of limitations issue pertaining to the conflict of interest claim was submitted to a jury, and the jury returned a verdict in favor of Murray based on the statute of limitations. The court entered judgment based on the jury's verdict.

[17,18] On appeal, the O'Daniels claim that the district court erred when it denied their motions for summary judgment on the conflict of interest claim. This assignment of error focuses on the summary judgment ruling but ignores the fact that the statute of limitations issue was later tried to a jury, and on the complete record made at trial, the jury found in Murray's favor. We have held that the denial of a summary judgment motion is neither appealable nor reviewable. *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). We have further stated that whether a motion for summary judgment should have been granted generally becomes moot after trial. This is because the overruling of such a motion does not decide any issue, but merely indicates that the trial court was not convinced that the moving party was entitled to judgment as a matter of law. After trial, the merits should be judged in relation to the fully developed trial record, not whether a different judgment may have been warranted on the record at summary judgment. *Id*. We therefore do not review the O'Daniels' claims

that the court erred when it denied motions for summary judgment that the O'Daniels made before the jury trial.

For completeness, we note the O'Daniels generally assert that the court erred when it entered judgment in favor of Murray on the conflict of interest claim; however, they make no assignment of error related to a specific ruling made by the court during the trial. They generally argue that the discovery rule or the continuous representation rule extended the limitations period, without acknowledging that the jury by its verdict implicitly rejected these assertions. The jury found against the O'Daniels and in favor of Murray on the statute of limitations issue, and the court entered judgment in favor of Murray on the conflict of interest claim based on the jury's verdict. We see no error in the court's entering judgment based on such verdict. Because the O'Daniels assign no reviewable error with respect to the trial that resulted in such verdict, we affirm the judgment entered in favor of Murray on the conflict of interest claim.

*Disclaimer Advice Claim.*

The O'Daniels claim that the district court erred when it granted summary judgment in favor of Murray on the disclaimer advice claim based on the court's determination that this claim was discovered in April 2002, when Bernard's estate tax return was completed, and that the claim was therefore barred by the statute of limitations. Upon our appellate review, the summary judgment record infers that the statute of limitations was extended by the discovery rule, and we must take the reasonable inferences in favor of the O'Daniels as the party against whom judgment was granted. See *Shada v. Farmers Ins. Exch., ante* p. 444, ___ N.W.2d ___ (2013). We therefore agree with the O'Daniels that the court erred when it determined on summary judgment that the claim was barred by the statute of limitations. We reverse the grant of summary judgment in favor of Murray and remand the cause for further proceedings with respect to this claim.

The disclaimer advice claim generally concerns Murray's advice regarding the plan for Elizabeth to disclaim property. The O'Daniels alleged in their complaint that Murray's advice

regarding the execution of disclaimers "was negligent and deviated from the standard of care observed by attorneys practicing law in Omaha, Nebraska in 2001." They alleged that the advice was deficient for various reasons, including errors in Murray's tax savings computations. They also alleged the disclaimers were ineffective to achieve the intended result because under the terms of Bernard's will, property would pass to a trust for Elizabeth's benefit rather than to Elizabeth herself, and therefore the disclaimers would not affect the passing of such property to the trust. They further alleged that the disclaimers were ineffective because the holders of Elizabeth's power of attorney would receive a share of the property disclaimed by Elizabeth, which was contrary to the law providing that the holder of a power of attorney could not make a gift to himself or herself unless the power of attorney specifically so provided.

Murray gave the challenged advice regarding disclaimers, and the plan was carried out with the execution of disclaimers in the second half of 2001. The negligent acts alleged in this claim occurred in 2001, and therefore, unless the discovery rule or the continuous representation rule applied, the disclaimer advice claim was barred by the 2-year statute before the parties executed the tolling agreement on April 6, 2004.

In an order entered March 3, 2011, the district court concluded, inter alia, that this claim accrued in 2001 and was barred by the 2-year statute of limitations before the tolling agreement was executed in 2004. The court concluded that neither the discovery rule nor the continuous representation rule applied to toll the statute. With regard to the discovery rule, the court concluded that the O'Daniels were put on inquiry notice of the disclaimer claim prior to the expiration of the limitations period when in April 2002 they learned that the estate taxes were higher than expected. With regard to the continuous representation rule, the court concluded that Murray's representation of the estate during the IRS audit was not an attempt to reverse purportedly unfavorable results of his advice regarding the disclaimers and that therefore, the continuous representation rule did not apply because it was not representation with regard to the same matter.

We disagree with the district court's determination that learning of the higher tax liability put the O'Daniels on inquiry notice of the disclaimer advice claim. In making this determination, the court relied on Guinn's testimony that the tax liability reported on the estate's return in April 2002 was greater than what she expected it would be. From this comment, the district court determined that the O'Daniels were put on inquiry notice of problems with the disclaimer advice. The district court's analysis fails to incorporate the evidence with respect to how Murray's tax planning advice was expected to work.

The disclaimer plan set forth by Murray was always expected to result in a higher estate tax being paid in Bernard's estate but a lower overall estate tax being paid with regard to both Bernard's and Elizabeth's estates. In effect, the plan was that some estate tax would be paid in Bernard's estate in order to save a greater amount of estate tax in Elizabeth's estate. If the disclaimers were ineffective, then the property would have gone to the trust to benefit Elizabeth and the property would have been included in the QTIP election, resulting in less tax than what the O'Daniels expected based on the plan set forth by Murray. The evidence showed that the taxes were higher than Guinn expected generally because of an unrelated issue involving a grandchild's inheritance rather than the allegedly erroneous disclaimer advice. Therefore, when Guinn learned that taxes were higher than she expected (due to an unrelated issue), such knowledge did not give the O'Daniels inquiry notice of a possible problem with the disclaimer advice. If the O'Daniels had inquired into the cause of the increased taxes in April 2002, such inquiry would have led them to discover the unrelated issue that caused taxes to be higher than originally estimated but would not have led them to discover the alleged problems with the disclaimer advice.

The only other evidence bearing on discovery of the disclaimer advice appears to indicate that the O'Daniels did not discover possible problems with the disclaimer advice until early 2004, when other attorneys told them that the disclaimers were not valid or effective. The original 2-year limitations period on the disclaimer advice claim ended in 2003.

Therefore, if discovery occurred in early 2004, it occurred after the end of the original limitations period; and under § 25-222, the O'Daniels had 1 year from the date of discovery to bring an action on their claim. The tolling agreement was signed in April 2004, within 1 year after the O'Daniels discovered their claim in early 2004 as a result of consultation with other attorneys. The evidence regarding higher taxes and the comments of other attorneys fails to indicate that the O'Daniels discovered or should have discovered potential problems with the disclaimer advice before early 2004. Thus, on the summary judgment record, the O'Daniels benefit from the discovery rule. Because we conclude that the discovery rule applied, we need not consider whether the continuous representation rule also applied.

The ruling under consideration was made on Murray's motion for summary judgment, and we must take the reasonable inferences in favor of the O'Daniels as the party against whom judgment was granted. See *Shada v. Farmers Ins. Exch.*, *ante* p. 444, ___ N.W.2d ___ (2013) (appellate court views evidence in light most favorable to party against whom judgment was granted and gives that party benefit of all reasonable inferences). Taking inferences in favor of the O'Daniels, we determine that Murray did not show that the disclaimer advice claim was barred by the statute of limitations and that judgment should be entered in Murray's favor. The district court erred when it determined this claim was time barred and granted summary judgment in favor of Murray on the disclaimer advice claim. We therefore reverse the grant of summary judgment in favor of Murray, and we remand the cause to the district court for further proceedings on the disclaimer advice claim.

*QTIP Election Claim.*

The O'Daniels claim that the district court erred when it determined that the QTIP election claim was time barred and granted a directed verdict in favor of Murray. We agree with the O'Daniels, and we reverse the grant of a directed verdict and remand the cause to the district court for further proceedings on the QTIP election claim.

The O'Daniels alleged in their complaint that Murray negligently failed to include the purportedly disclaimed property in the QTIP election on the estate's tax return and that as a result of such failure, the estate was denied a marital deduction for the value of the property and that the estate incurred and paid estate taxes that would not have been incurred if the property had been included in the QTIP election. Although this claim was presented to a jury, the jury was unable to reach a verdict, resulting in a mistrial. The court then considered the parties' motions for directed verdict and concluded that the claim was barred by the statute of limitations. The court determined that the filing of the estate tax return in April 2002 was not the wrongful act at issue and that instead, the manner in which the return was prepared was merely a result of the allegedly erroneous disclaimer advice that Murray gave in 2001. The court further found that even if the claim was not barred, the O'Daniels had failed to introduce evidence at trial to show that Murray's negligence was the proximate cause of their damages; that is, the O'Daniels failed to show that they would not have had to pay the amount of estate taxes incurred if Murray had included the disclaimed property in the QTIP election.

With regard to the QTIP election claim, the O'Daniels assert that the act giving rise to the claim accrued on April 9, 2002, when Murray filed the estate tax return, and that therefore, the tolling agreement occurred within 2 years thereafter, thus within the limitations period. Murray argues, and the district court determined, that the claim did not accrue upon the filing of the estate tax return; instead, the filing of the return was merely a consequence of the allegedly negligent disclaimer advice given in 2001. The district court concluded that this claim accrued at the time the advice was given in 2001 and that therefore, the limitations period was over before the signing of the tolling agreement on April 6, 2004.

Regardless of whether we agree with Murray's contention and the court's conclusion that the QTIP election claim was merely a result of the allegedly erroneous disclaimer advice or whether we agree with the O'Daniels' contention that they asserted a separate claim that accrued only upon completion of

the estate return, we nevertheless conclude that the claim was not barred by the statute of limitations. If the O'Daniels' claim with regard to the QTIP election was a separate claim, then it accrued upon the filing of the return on April 9, 2002, and the 2-year limitations period under § 25-222 had not run when the tolling agreement was executed on April 6, 2004. If the QTIP election claim was merely a result of the allegedly erroneous disclaimer advice, then, similar to our reasoning above with respect to the disclaimer advice claim, on the record before us, the O'Daniels did not discover the QTIP election claim until early 2004 and the QTIP election claims also was not barred by the statute of limitations.

When it granted the directed verdict in favor of Murray, the court also concluded that even if the QTIP election claim was not barred by the statute of limitations, the O'Daniels did not prove any damages that were proximately caused by Murray's alleged negligence. However, the district court's conclusion in this respect appears to be influenced by the fact that the court was considering the QTIP election claim in isolation. Given the procedural posture of the claims and because we have determined on the record before us that neither the disclaimer advice claim nor the QTIP election claim was conclusively barred by the statute of limitations, the two claims must be considered together on remand, and we consider the court's conclusion with regard to damages in light of both claims.

In determining that the QTIP election claim was barred by the statute of limitations, the court determined that the claim was merely a consequence of the disclaimer advice claim— in effect, that the exclusion of the "purportedly" disclaimed property from the QTIP election was merely the result of the disclaimer advice. However, in concluding that the O'Daniels provided no evidence of damages, the court apparently looked at the QTIP election claim in isolation and concluded that there was no evidence of damages because the estate taxes were not a result of Murray's excluding the property from the QTIP election when such exclusion was required by the fact the property had been disclaimed.

Considering the claims together, the testimony of O'Daniels' experts indicates that if Murray had not given the allegedly

erroneous disclaimer advice, then the property would not have been disclaimed and it would have been eligible to be included in the QTIP election, thereby avoiding estate tax on that property in Bernard's estate. The O'Daniels also asserted that they incurred additional attorney fees in an attempt to undo the problems caused by Murray's disclaimer advice and his failure to make a QTIP election on the property that should not have been disclaimed. The district court's conclusion that the O'Daniels presented no evidence of damages was made in the context of a trial limited to the QTIP election. On remand, the disclaimer advice claim and the QTIP election claim should be considered together and evidence of damages should be considered as a result of both claims.

We conclude that the district court erred when it directed a verdict in favor of Murray on the QTIP election claim. We reverse such directed verdict, and we remand the cause for further proceedings on the QTIP election claim in conjunction with further proceedings on the disclaimer advice claim.

### The O'Daniels' Remaining Assignments of Error.

The O'Daniels' remaining assignments of error relate to evidentiary rulings and other matters arising from the jury trial on the QTIP claim which resulted in a mistrial. We have reversed the court's grant of a directed verdict on this claim and remanded the cause for further proceedings, and we need not address these issues in order to resolve this appeal. Although some of these issues may recur, the rulings of which the O'Daniels complain in their remaining assignments of error arose in the context of a trial that involved only the QTIP election claim. On remand, the court will likely be faced with a different set of circumstances because any proceedings that may occur on remand will also involve the disclaimer advice claim. If the same issues arise on remand, rulings on the issues will arise in a much different context on remand than the context in which they were originally decided. Any consideration of the issues in the context of the previous trial would not necessarily be dispositive on remand. We therefore do not consider the O'Daniels' remaining assignments of error.

*Murray's Cross-Appeal.*

On cross-appeal, Murray refers us to the following language in the August 22, 2011, order that "it should have been clear that the Disclaimers were invalid and the purportedly disclaimed property must be included in the QTIP election" and, rephrased, asserts on cross-appeal that in the event of a remand, given this ruling, the district court improperly removed from the jury's consideration the issue of fact as to whether Murray's conduct fell below the standard of conduct with respect to the disclaimer advice. Because we are remanding the cause for further proceedings regarding the disclaimer advice claim and the QTIP election claim, this issue will likely recur on remand and the court's ruling could be relevant to issues on remand. Although we do not find merit to Murray's assignment of error, we nevertheless consider Murray's cross-appeal in order to set forth standards that should be applied on remand and that should inform how the analysis by the district court should proceed in further proceedings.

In an order entered August 22, 2011, prior to the trial on the QTIP election claim, the district court addressed the O'Daniels' third motion for partial summary judgment. The O'Daniels had moved for partial summary judgment on several issues, including an issue that was described in the court's order as being "[w]hether [Murray] erred under settled Nebraska law in failing to make a QTIP election on the [estate tax return] with respect to all property passing to the [trust benefiting Elizabeth], including the property purportedly disclaimed pursuant to the two Disclaimers." The court noted that in making the QTIP election, Murray acted under the assumption that the disclaimers were valid and that therefore, no QTIP election could be made for the disclaimed property because such property was not part of the trust benefiting Elizabeth. The court concluded as a matter of law that the disclaimers were invalid and that as a consequence, the purportedly disclaimed property must be included in the QTIP election. Based on its assessment of the state of the law at the time, the court specifically stated that "it should have been clear that the Disclaimers were invalid and the purportedly disclaimed property must be included in the QTIP election."

Murray challenges the quoted statement on cross-appeal. Murray contends that the statement can be read as though the district court concluded as a matter of law that Murray's conduct fell below the standard of conduct, thereby effectively determining that Murray was negligent. Murray argues in its brief that in the event this cause is remanded for further proceedings on the O'Daniels' claims, we "should clarify that the question whether . . . Murray reasonably believed the Disclaimers were valid presents a question of fact" to be determined by the jury and that Murray should be permitted to present expert testimony relative thereto. Brief for appellees on cross-appeal at 48.

Taking the August 22, 2011, order as a whole, we do not read the court's order as Murray suggests and we reject Murray's assignment of error to the extent it asserts that the district court preempted the jury's function. In this regard, we note that in the August 22 order, after the court made the challenged statement, the order continued and states "but whether this error constitutes negligence is a question of fact for the jury to decide." We believe this statement shows that the district court properly understood the legal framework of a legal malpractice action. Nevertheless, because we remand the cause for further proceedings on the disclaimer advice and QTIP election claims, we provide clarification of what issues in a professional negligence case are questions of law for the court and what issues are questions of fact for the fact finder.

[19-23] In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Young v. Govier & Milone, ante* p. 224, ___ N.W.2d ___ (2013). With regard to the element of neglect of a reasonable duty, we have set forth the following propositions of law: In a legal malpractice action, the required standard of conduct is that the attorney exercise such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances. *Id.* Although the general standard of an attorney's conduct is established by law, the question of what

an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact. *Id.* Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith. *Id.* A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment. *Id.*

The district court in its August 22, 2011, order cited *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 703-04, 578 N.W.2d 446, 451 (1998), for the proposition that "[w]hen an attorney is charged with an error concerning a legal question, the trial court must initially determine whether the attorney erred . . . ." We similarly read *Baker* as holding that to the extent there is an issue as to what the law was and whether the attorney correctly advised on such law is a question of law for the court rather than a question of fact to be submitted to the jury.

However, a critical issue in a legal malpractice case is a question of fact regarding whether the attorney's specific conduct fell below what the attorney's specific conduct should have been in that particular case. While the court might decide that the attorney's advice did not comport with the substance of the law at the time it was given, it is a question of fact whether under the particular circumstance the attorney's conduct was such that the attorney exercised such skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

We note that subsequent to the decision in *Baker*, this court in *Boyle v. Welsh*, 256 Neb. 118, 124, 589 N.W.2d 118, 124 (1999), explicitly held for the first time that "expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith." Thus, reading *Baker* in light of *Boyle* and other cases regarding questions of fact in legal malpractice cases, we conclude that while it is a question of law for the court as to whether an attorney's advice comports with the law or whether an attorney's advice was erroneous, the question whether such error caused the attorney

to fall below the standard of conduct is a question of fact and expert testimony can be used to establish whether the conduct was in conformity with the standard. See *Young v. Govier & Milone, supra*.

Having reviewed these standards, we note that the ruling of which Murray complains on cross-appeal was made by the district court prior to the jury trial on the QTIP election claim. That trial ended in a mistrial, and the court thereafter resolved the claim by entering a directed verdict in favor of Murray after the court determined that the claim was barred by the statute of limitations and that the O'Daniels failed to show damages. Thus, as the claim was resolved below, the court's ruling that Murray erred with respect to the substance of the legal advice was not relevant to the resolution of the case. We note further that on cross-appeal, Murray does not directly argue that the court erred when it determined as a matter of law that the disclaimers were invalid. Instead, Murray's argument is that the court's order was erroneous to the extent it could be read to state that Murray's actions with regard to the disclaimer and the QTIP election were negligent. Because the court's determination that the disclaimers were not valid was not relevant to the ultimate disposition of the claim below, and because Murray does not specifically assign error to such determination, we make no comment as to whether the court was correct as a matter of law when it concluded that the disclaimers were invalid. Instead, we provide the above review of standards regarding questions of law and questions of fact with regard to breach of the standard of care in order to address Murray's concern that the court's ruling could be used on remand to hold as a matter of law that Murray's advice was negligent, thereby subverting a jury finding with respect to negligence.

## CONCLUSION

With regard to the conflict of interest claim, we find no error in the court's entry of judgment in favor of Murray based on the jury's verdict that the claim was barred by the statute of limitations. We therefore affirm the court's judgment in favor of Murray on the conflict of interest claim. With

regard to the disclaimer advice claim, we conclude that the district court erred when it concluded on summary judgment that the statute of limitations barred the claim based on its determination that the O'Daniels were put on inquiry notice of the claim when they learned the amount of the tax liability in April 2002. We therefore reverse the order granting summary judgment in favor of Murray on the disclaimer advice claim, and we remand the cause for further proceedings on the claim. With regard to the QTIP election claim, we conclude that the district court erred when it concluded that the statute of limitations barred the claim and when it concluded that the O'Daniels failed to put on evidence of damages proximately caused by Murray's alleged negligence. We therefore reverse the order granting a directed verdict in favor of Murray on the QTIP election claim, and we remand the cause for further proceedings on the claim. With regard to Murray's cross-appeal, we find no merit to the cross-appeal and we set forth standards regarding questions of law and questions of fact in a legal malpractice case that should be applied in the proceedings on remand.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

MILLER-LERMAN, J., participating on briefs.

WRIGHT, MCCORMACK, and CASSEL, JJ., not participating.